ISRAEL ZIMETBAUM & another, trustees, *vs.* MASHIE BERENSON & another.

Suffolk.   December 12, 1928, January 2, 1929. — May 29, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Guaranty. Contract,* Consideration, Construction, Under seal, Performance and breach, Of indemnity.

A master in a suit in equity found that the plaintiff and a corporation executed a contract in writing, to run from year to year until terminated by either party upon a certain notice, whereby the plaintiff agreed to advance to the corporation a certain percentage of the face value of accounts assigned by it to him and, after collecting them, to pay to it the remainder of the amounts collected after deduction of his legal and other expenses and charges in making the collections and his remuneration; that on the same date the defendant executed a writing which bore no seal although it stated that he had appended a seal, whereby, in consideration of the execution of the contract by the plaintiff at his request, he "unconditionally" guaranteed performance of the contract by the corporation; that, about a month later, he notified the plaintiff that he cancelled the guaranty; that thereafter the plaintiff made advances to the corporation under the contract, the amounts of which were in accordance therewith, although upon occasions lump sums were advanced which varied slightly from the percentage specified; that the plaintiff and the corporation carried on business in the State of New York; that the plaintiff employed a collection agency in making

collection of the accounts assigned; that the proprietor of the agency was related to the plaintiff and was not registered in New York as required by law; and that a certain sum was due the plaintiff from the corporation under the contract. The plaintiff sought to enforce the guaranty. A final decree was entered ordering the defendant to pay such sum to the plaintiff. *Held*, that

(1) The execution of the contract by the plaintiff constituted a present consideration for the promise by the defendant to guarantee repayment by the corporation of advances to be made to it by the plaintiff in accordance with the contract, whenever those advances should be made: it was not necessary that the advances actually should be made before there was such consideration;

(2) Since there was such consideration, and since the guaranty contained no specific provision for its termination, it must be construed as coextensive with the contract; and the defendant's notice of cancellation did not relieve him of liability under the guaranty for advances thereafter made by the plaintiff;

(3) The parties contemplated that the guaranty should have the effect of an instrument under seal;

(4) In the performance of the contract by the plaintiff there was no variation from its terms sufficient to relieve the defendant from liability under the guaranty: the slight variations in sums advanced by the plaintiff from the percentage specified in the contract, the relationship to the plaintiff of the proprietor of the collection agency and his failure to register in accordance with law were immaterial, and the employment of the agency by the plaintiff was permitted by the contract;

(5) The decree was proper and was affirmed.


BILL IN EQUITY, filed in the Superior Court on April 10, 1925, and afterwards amended, to reach and apply shares of stock owned by the defendant Berenson in satisfaction of a claim against him by the plaintiffs under the guaranty described in the opinion. The suit was commenced by a common law writ in trustee process, dated March 17, 1925.

The suit was referred to a master, who found that the plaintiffs placed certain of the accounts assigned to them by S. L. Ginsburg Co., Inc., in the hands of a collection agency, the proprietor of which was related to one of the plaintiffs, that the proprietor failed to register in the State of New York as required by its laws and that substantial portions of the advances made by the plaintiffs to the company were made after July 3, 1924. It appeared that the plaintiffs and the company carried on business in the State of New York, and that the contract of June 10, 1924,

between the plaintiffs and the company provided that the plaintiffs would advance to the company up to seventy-eight per cent of the net face value of the accounts approved by them. Other material facts found by the master are stated in the opinion.

The suit was heard upon the master's report by *Lummus,* J., by whose order there were entered an interlocutory decree confirming the report, and a final decree ordering the defendant to pay to the plaintiffs $17,157.04 and interest thereon in the sum of $1,401.14. The defendant Berenson appealed from the final decree only.

*T. W. Morris & L. Wyman,* for the defendant Berenson, submitted a brief.

*G. S. Alberts,* for the plaintiff.

WAIT, J. This is an appeal from a decree ordering payment of an amount found due to the plaintiffs from the defendant Berenson. The appellant has argued but two objections to the decree. We treat other possible grounds of appeal as waived, and shall not discuss them.

There is no dispute that the defendant, who was then interested in S. L. Ginsburg Co., Inc., on June 10, 1924, executed, under seal, a guaranty of a contract of that company with The Finance Trust which bore the date February 26, 1924; and another guaranty, not under seal, of another contract between the same parties which was dated June 10, 1924. These contracts provided for advances by The Finance Trust to the company on accounts assigned to the trust and for payment to the company of the balance of the amount collected above the charges, expenses and remuneration of the trust. They provided further for collection by the trust, for examination of the company's affairs, for advice as to its bookkeeping and credits and in the conduct of its business and especially in its finance whenever called upon so to do. There is great detail in the contract which it is not necessary to state particularly. The plaintiffs are the trustees of The Finance Trust. No liability attaches under the contract of February. A balance was due the company on the business done under it. Under the second contract, however, the

master found that there was due the trust $17,157.04, as principal, and $1,401.44, as interest from February 28, 1927.

The second guaranty was in these words:

> For and in consideration of the execution by THE FINANCE TRUST of the foregoing contract at our request hereby made, the undersigned jointly and severally hereby unconditionally guarantee to THE FINANCE TRUST, its successors and assigns, the full, prompt and faithful payment, performance and discharge by S. L. Ginsburg Co., Inc. hereinbefore termed "The Customer," of each of the agreements, guaranties, warranties, provisions and conditions set forth in the foregoing contract or in any rider now or hereafter thereto attached or in any other written instrument executed by said Customer to carry out the provisions of said contract.
>
> The undersigned hereby waive notice of acceptance of this guaranty by THE FINANCE TRUST, also notice of any breach of any of the said agreements, guaranties, warranties, and conditions and of any default on the part of said "Customer," or on the part of any debtor owing any account coming within the provisions of said contract.
>
> IN WITNESS WHEREOF, we, and each of us, have hereunto set our hands and seals this tenth day of June, 1924.

No seals, however, are appended. The first guaranty stipulated that it "shall continue until second party receives written notice revoking said liability on future accounts or transactions." The contract to which it related could be cancelled at any time as to future transactions by written notice. The second contains no provisions for its termination. The term of the contract to which it relates "shall be from the 10th day of June, 1924, and thereafter from year to year, with the privilege on the part of either party to terminate this agreement at any time, after date thereof, upon five days notice given by either party to the other." The difference is significant. We cannot suppose that the defendant failed to observe that it existed.

On July 3, 1924, the plaintiffs received the following notice from the defendant: "As I am no longer associated with S. L. Ginsburg Company, I hereby notify you that I am hereby cancelling all guarantee or guarantees that I made for that company." This, he contends, relieved him from liability on advances made after that date. We think not.

Had there been no consideration for his promise to pay except advances made from time to time, it well may be that he could, by notice, terminate his liability for advances made after such notice had been received. *Jordan* v. *Dobbins*, 122 Mass. 168. When, however, a binding contract upon present consideration has been made, the liability can terminate only as provided for by the contract of guaranty. *Spring* v. *Leahy*, 254 Mass. 614. *Cohen* v. *Bailly*, 266 Mass. 39, 45, 46. Williston, Contracts, § 1253. Here no right to terminate is provided for in the agreement. It must be taken that the guarantor's liability was to extend throughout the life of the contract between the trust and the "customer." There was a present consideration expressed in the writing,— the execution of the contract between trust and "customer." When the execution took place, there was consideration for the promise to pay advances made in the future; and no new consideration arising from actual making of advances was necessary to the existence of an enforceable right in the trust against the guarantor. There was no series of offers to be accepted. There was one negotiation resulting in a definite liability for repayment of advances whenever made, if made in accord with the contract guaranteed. And there was, in the second guaranty, no such provision for a cesser of that right on notice, as had been expressed in the first guaranty. It is true that the two guaranties differed in the important respects that the first was a sealed instrument, while the second was not; and that the power to terminate liability under a sealed differs from that under an unsealed guaranty; see Williston, Contracts, § 1253; and that, in the absence of express provision in regard to termination, the power to terminate liability under a sealed differs from that under an unsealed guaranty. Any argument that a recognition of this difference was intended to be made by the parties

is negatived by the facts that the second guaranty recites that the seals of the parties are to be affixed. The parties contemplated that the second, like the first, should be under seal. The first contained a provision for termination by notice. The second did not.

The defendant contends further that he has been discharged by failure of the trust to adhere to the terms of the contract. No doubt a contract of guaranty is to be construed strictly, and the guarantor is not to be held liable for anything not in accord with the contract. *Warren* v. *Lyons*, 152 Mass. 310. It is not to be varied by trust and customer. The finding of the master, that the sum which he found to be due was advanced in accord with the contract, disposes of the objection based on his statement that, on occasions, instead of advancing seventy-eight per cent of the cash value agreed upon, lump sums were advanced which sometimes were slightly less and sometimes slightly more than the seventy-eight per cent of the agreed value of the accounts assigned. Slight variations from seventy-eight per cent in specific advances is immaterial when upon the whole transaction the sum contracted for has been advanced. The report discloses no failure of performance on the part of the trust; and no variation of the contract by trust and company which would release the guarantor. Nor did the employment and payment of a collection agency to collect the assigned accounts after the appointment of a receiver for the company, as matter of law, constitute a breach of contract. By the terms of the contract the company was to pay "charges incurred by them in the collection of said accounts," and legal and other expenses incurred by the trust in collecting "a sum payable to the Trust hereunder or by any guarantor hereof, or in the assertion or protection of the Trust rights, shall be paid by the Customer to the Trust." Upon the appointment of the receiver it became the duty of the trust to collect the assigned accounts, although under the terms of the contract it could have sold them. It may well be that the obligation to collect them was most advantageously performed by a speedy collection through an agency specially employed for the purpose, and that the company benefited by the method

adopted. The relationship of the persons interested in the collection agency to the trust and their compliance or non-compliance with the laws of New York with regard to collections, are immaterial here. There is nothing in the report to indicate that this charge was merely fictitious.

The case of *Hyland* v. *Habich*, 150 Mass. 112, deals with a termination by death of the guarantor and is to be distinguished. We do not regard it as controlling here.

It follows that the decree was right and the order must be

*Decree affirmed with costs.*