VILLAGE LINC CORPORATION *v.* THE CHILDREN'S STORE, INC., ET AL.
(11554)

DALY, LANDAU and FREEDMAN, Js.

Argued March 22—decision released June 15, 1993

*D. Seeley Hubbard,* for the appellant (plaintiff).

*Marc M. Schindelman,* for the appellees (defendants).

DALY, J. The plaintiff appeals from the trial court's order denying the plaintiff a prejudgment remedy against the individual defendants, Carla Ahlers and Richard Ahlers, to secure a judgment in a pending suit

for nonpayment of rent on a renewed lease that the plaintiff contends the individual defendants guaranteed.[1] We affirm the judgment of the trial court.

The facts on which the plaintiff's action rests are as follows. On November 27, 1982, Hennessey and Hennessey, a partnership doing business as Village Walk Associates, a predecessor in title to the plaintiff Village Linc Corporation, and Tot-Ta-Trot, the name under which the named defendant was doing business, entered into a written five year lease. The lessee was described in the lease as " 'Tot-Ta-Trot' personally guaranteed by Carla Ahlers." The lease provided, "The term of this lease shall be Five (5) years commencing on the Commencement Date [January 1, 1983] . . . unless sooner terminated or extended as hereinafter expressly provided." The lease also specified the amount of the rent to be paid by the lessee for the duration of the original term and provided for the amount of the rent in the event the lease was renewed for five years. An addendum to the lease gave the lessee the option to renew the lease for two consecutive five year renewal periods "at such rental as the Landlord and Tenant shall mutually agree upon" even though the lease itself set forth the cost of the rental payments for the first five years of renewal. The lessee was required to notify the lessor of its intention to exercise this option through written notice given six months before the original five year term ended. Carla Ahlers, the predecessor of the named defendant, executed both the lease and the addendum on behalf of Tot-Ta-Trot.

On November 6, 1985, the lease was modified in writing by the "Lease Modification Agreement." This agreement was executed to settle a suit relating to cer-

---

[1] The trial court granted the prejudgment remedy with respect to the named defendant after finding probable cause to sustain the plaintiff's claim against the named defendant in the amount of $162,662.

tain disputed common charges.[2] The modification agreement referred to the five year term of the original lease but did not refer to the lessee's option to renew under the addendum of the original lease. The guarantee clause of the modification agreement provided: "The Tenant shall be Tot-Ta-Trot, The Children's Store, Inc., a Connecticut corporation, and performance of the obligations of the Tenant under the lease is personally guaranteed by Carla Ahlers. The performance of the obligations of the Tenant under the lease is also personally guaranteed by Richard Ahlers for the period of six months from either the date that Tenant vacates from any default notice by Landlord or the date of notice of termination by Tenant." This agreement was executed by Carla Ahlers individually and as president of Tot-Ta-Trot, by Richard Ahlers "as Guarantor under Paragraph 5," and by the landlord.

The named defendant subsequently exercised its option to renew the lease pursuant to the addendum of the original lease and a "lease renewal agreement" was executed on November 16, 1987. This agreement made no reference to the guarantees of the individual defendants set forth in the lease modification agreement. The lease renewal agreement was signed by Carla Ahlers as "Tenant-Tot-Ta-Trot, The Children's Store, Inc. by Carla Ahlers, Its President," and by the plaintiff's representatives. It was not signed by Richard Ahlers. This agreement leased the premises to the named defendant for an additional eight years. A new rent schedule was created in this lease renewal agreement and the named defendant lessee was granted the right to renew the lease for another five year period.

---

[2] Carla Ahlers formed a corporation, Tot-Ta-Trot, The Children's Store Inc., during the time between the original lease and the modification agreement. That corporation took the place of Tot-Ta-Trot and conducted business on the leased premises involved here. This corporation was, therefore, the lessee in the modification agreement.

At the landlord's request, the named defendant executed a landlord's "tenant's estoppel certificate" on November 29, 1989. It states that the original lease dated October 26, 1982, and expiring December 31, 1995, "is in full force and effect and has not been assigned, modified, extended, supplemented or amended" and that "the lease represents the entire agreement between the parties as to the leasing arrangements."

The named defendant breached the lease renewal agreement when it failed to pay the rent due in the lease. On September 4, 1991, the plaintiff instituted the underlying action to recover the unpaid rent from the named defendant and the individual defendants as guarantors. An application for a prejudgment remedy was filed in May, 1992, and a hearing was held on June 23, 1992, to determine if probable cause existed to sustain the plaintiff's action and to justify an order for a prejudgment remedy against the defendants.

The trial court issued the prejudgment remedy against the named defendant, The Children's Store, Inc., doing business as Tot-Ta-Trot, in the amount of $162,662. The trial court, however, denied the prejudgment remedy against the individual defendants finding that no probable cause existed to support the granting of a prejudgment remedy. On appeal, the plaintiff claims that the trial court improperly refused to grant the plaintiff a prejudgment remedy against the individual defendants as guarantors because the guarantee signed as part of the modification agreement was intended to cover the renewal of the lease as a matter of law.

Whether the parties in this case intended that the guarantee be a continuing guarantee that would secure the lease renewal agreement " 'is principally a question of the intention of the contracting parties, a ques-

tion of fact to be determined by the trier of facts.' *Monroe Ready Mix Concrete, Inc.* v. *Westcor Development Corporation,* 183 Conn. 348, 351, 439 A.2d 362 (1981)." *Connecticut Bank & Trust Co.* v. *Wilcox,* 201 Conn. 570, 576, 518 A.2d 928 (1986). "The finding of the trial court with respect to the intent of the contracting parties regarding the scope of their contractual commitment is, like any other finding of fact, subject only to limited review on appeal. *Otto Contracting Co.* v. *S. Schinella & Son, Inc.,* 179 Conn. 704, 709, 427 A.2d 856 (1980); *Hydro-Hercules Corporation* v. *Gary Excavating, Inc.,* 166 Conn. 647, 653, 353 A.2d 714 (1974); *Bianco* v. *Darien,* 157 Conn. 548, 557, 254 A.2d 898 (1969); *Finlay* v. *Swirsky,* 98 Conn. 666, 671, 120 A. 561 (1923)." *Monroe Ready Mix* v. *Westcor Development Corporation,* supra, 351. Normally our review of such a claim ·is limited because of the narrow scope of review of the legal and factual issues involved in an application for a prejudgment remedy; *Goodwin* v. *Pratt,* 10 Conn. App. 618, 623, 524 A.2d 1168 (1987); and because the determination of the intent of the parties to a contract, such as here, is a question of fact subject to review under the clearly erroneous standard. *Otto Contracting Co.* v. *S. Schinella & Son, Inc.,* supra; see *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980); see also Practice Book § 4061.

" '[W]e note the limited role that our case law assigns to appellate review of a trial court's broad discretion to deny or grant a prejudgment remedy. It is the trial court that must determine, in light of its assessment of the legal issues and the credibility of the witnesses, whether a plaintiff has sustained the burden of showing probable cause to sustain the validity of its claim. We decide only whether the determination of the trial court constituted clear error.' *Greenberg, Rhein & Margolis, Inc.* v. *Norris-Faye Horton Enterprises, Inc.,* 218 Conn. 162, 166, 588 A.2d 185 (1991)." *TIE Communi-*

*cations, Inc.* v. *Kopp,* 218 Conn. 281, 287, 589 A.2d 329 (1991). "The court's role on review of the granting of a prejudgment remedy is very circumscribed. It is not to duplicate the trial court's weighing process, but rather to determine whether its conclusion was reasonable. In the absence of clear error, this court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses. . . ." (Citations omitted; internal quotation marks omitted.) *Sweet* v. *Sumnerbrook Mill Development Corporation,* 21 Conn. App. 191, 193, 572 A.2d 385 (1990).

For a trial court to grant the prejudgment remedy requested, the plaintiff must demonstrate the existence of "probable cause to sustain the validity of his claim." General Statutes § 52-278d (a).[3] It is important to remember that "[t]he plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . ." (Citations omitted; internal quotation marks omitted.) *Dow & Condon, Inc.* v. *Anderson,* 203 Conn. 475, 479, 525 A.2d 935 (1987). "Our Supreme Court has recently had occasion to clarify the concept of 'probable cause' as that term is used in our prejudgment remedy statutes. In *Three S. Development Co.* v. *Santore,* 193 Conn. 174, 175–76, 474 A.2d 795 (1984), the court stated: ' "The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *Wall* v. *Toomey,* 52 Conn. 35, 36 (1884). Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. *Texas* v. *Brown,* 460 U.S.

---

[3] The procedure for applying for a prejudgment remedy is set forth in General Statutes §§ 52-278a through 52-278n.

730, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983).' " *Goodwin* v. *Pratt,* supra, 620–21. Thus, we must determine whether the trial court's determination that probable cause did not exist to sustain the plaintiff's claims was clearly erroneous.

In its memorandum of decision, the trial court explained that it found that "there is no probable cause as to Carla Ahlers and Richard Ahlers, the alleged guarantors. The guarantees that they signed do not specifically refer to renewals or extensions of the lease and the [modification agreement] containing the guarantees does not itself refer to any renewals. The plaintiff presented no evidence of the intention of either party with respect to whether the guarantees would apply to renewals. The renewal document stated that the renewal was subject to the terms of the lease, but the lease did not contain the guarantees which were not given until several years after the lease was executed." The trial court was entitled to rely on the language of the guarantee to determine the intention of the parties with regard to the lease renewal. *Connecticut National Bank* v. *Foley,* 18 Conn. App. 667, 670, 560 A.2d 475 (1989).

The plaintiff argues that probable cause exists to sustain the validity of its claim against the individual defendants because the facts demonstrate as a matter of law that the guarantee was intended to secure the lessee's obligations under the lease renewal agreement. The plaintiff contends that the guarantors knew they were securing a renewal and not just the lease because the addendum to the original lease gave the lessee an option to renew. See *Jones & Brindisi, Inc.* v. *Brenslaw,* 250 N.Y. 147, 164 N.E. 887 (1928); *Houlihan* v. *S. Bolton's Sons,* 109 Misc. 325, 179 N.Y.S. 670 (Sup. Ct. 1919), rev'd on other grounds, 193 App. Div. 421, 183 N.Y.S. 854 (1920). According to the plaintiff, the guaranty should have expressly limited the guarantors'

liability to the original term of the lease if the guarantors did not want to be liable for the period of the renewal. See *Jones & Brindisi, Inc.* v. *Brenslaw*, supra. The plaintiff further contends that this position reflects the intentions of the parties because Carla Ahlers personally guaranteed the original lease, knew that it could be renewed, was familiar with the terms of the lease and, therefore, had notice of the possibility of renewal. Furthermore, it is argued that Richard Ahlers, as Carla Ahlers' husband, also had notice of his liability under the guarantee should the option to renew be exercised. See id.

In response, the individual defendants maintain that the trial court correctly denied the prejudgment remedy because the guarantee is restricted as there is no language in the guarantee clause of the modification agreement indicating that the guarantee was intended to apply to a renewal. See *Zero Food Storage, Inc.* v. *Udell*, 163 So. 2d 303 (Fla. App. 1964); *Woods* v. *Doherty*, 153 Mass. 558, 27 N.E. 676 (1891). The individual defendants also point out that the lease renewal agreement does not refer to the guarantee contained in the modification agreement.

The plaintiff correctly points out that the addendum to the original lease specifically provided that the lessee may renew the lease for two five year terms, which indicates that both guarantors were aware of the possibility of an extension when they signed the modification of that lease. *LeCraw* v. *Atlanta Arts Alliance, Inc.*, 126 Ga. App. 656, 191 S.E.2d 572 (1972); *Houlihan* v. *S. Bolton's Sons,* supra. As the trial court stated, however, the modification agreement, which included the guarantee clause, refers only to the "initial term of the said Lease on January 1, 1982 and expires on December 1, 1987" and does not to refer to any lease renewal. Compare *Connecticut National Bank* v. *Foley,* supra (where the guarantee expressly stated that the

guarantor was responsible for the future debt of the borrower). Furthermore, the lease renewal agreement refers only to the original lease and not the modification agreement or the guarantee contained therein. See *Zero Food Storage, Inc.* v. *Udell,* supra. These facts evidence an intention to limit the applicability of the modification agreement and its guarantee to the original term of the lease. Id., 304; *Woods* v. *Doherty,* supra. Thus, we cannot say that the trial court's decision denying the plaintiff a prejudgment remedy against the named defendant was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.